UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:24-cv-25089

C.B., individually, a citizen and resident of the State of Arkansas;
T.B., individually, a citizen and resident of the State of Arkansas;
P.F., individually, a citizen and resident of the State of Texas;
W.R., individually, a citizen and resident of the State of Texas;
M.L., individually, a citizen and resident of the State of Arkansas;
T.P., individually, a citizen and resident of the State of Arkansas;
D.T., individually, a citizen and resident of the State of Arkansas;
J.T., individually, a citizen and resident of the State of Arkansas;
M.M. individually, a citizen and resident of the State of Missouri;
V.M. individually, a citizen and resident of the State of Missouri;
K.P., individually, a citizen and resident of the State of Georgia;
and
S.P., individually, a citizen and resident of the State of Georgia,
and as mother and natural guardian of K.P. as a minor;

       Plaintiffs,

v.

ROYAL CARIBBEAN CRUISES LTD.,
and ARVIN JOSEPH MIRASOL,

       Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL[1]

The Plaintiffs[2] hereby sue Defendants and allege as follows:

---

[1] Numerous other lawsuits against both of the Defendants have been filed in this district, including: *Jane Doe (S.F.), et al. v. Royal Caribbean Cruises LTD., et al.*, Case 1:24-cv-23953-DPG; *Jane Doe v. Royal Caribbean Cruises LTD.*, Case 1:24-cv-24039-JB; *J.L.S., as next friend for, B.L.S, a minor, et al. v. Royal Caribbean Cruises LTD., et al.*, Case 1:24-cv-24139-JEM; *K.T., individually, a citizen and resident of the State of Virginia, et al. v. Royal Caribbean Cruises LTD., et al.*, Case ,; and *M.S., individually, a citizen and resident of The State of Colorado, et al. v. Royal Caribbean Cruises LTD., et al.*, Case 1:24-cv-24738-PCH.

[2] The Plaintiffs are referred to by pseudonyms and their initials because of the nature of the allegations alleged herein. The names of each Plaintiff have been provided directly to Defendant,

## JURISDICTIONAL AND PRELIMINARY ALLEGATIONS

1. The Plaintiffs' citizenship and residency are as follows, and the sailing date and cabin number for each Plaintiff, when they sailed aboard the *Symphony of the Seas*, are as follows:

    a. JANE DOE 1 (C.B.) is a citizen and resident of the State of Arkansas, with a sailing date of January 13, 2024, and cabin number 9702;

    b. JOHN DOE 1 (T.B.) is a citizen and resident of the State of Arkansas, with a sailing date of January 13, 2024, and cabin number 9702;

    c. JANE DOE 2 (P.F.) is a citizen and resident of the State of Texas, with a sailing date of December 24, 2023, and cabin number 9698;

    d. JANE DOE 3 (W.R.) is a citizen and resident of the State of Texas, with a sailing date of December 24, 2023, and cabin number 9698;

    e. JOHN DOE 2 (M.L.) is a citizen and resident of the State of Arkansas, with a sailing date of January 13, 2024 and cabin number 9700;

    f. JANE DOE 4 (T.P.) is a citizen and resident of the State of Arkansas, with a sailing date of January 13, 2024 and cabin number 9700;

    g. JOHN DOE 3 (D.T.) is a citizen and resident of the State of Arkansas, with a sailing date of January 13, 2024 and cabin number 9704;

    h. JANE DOE 5 (J.T.) is a citizen and resident of the State of Arkansas, with a sailing date of January 13, 2024 and cabin number 9704;

    i. JOHN DOE 5 (M.M.) is a citizen and resident of the State of Missouri, with a sailing date of January 13, 2024 and cabin number 9706;

---

ROYAL CARIBBEAN CRUISES LTD. And/or are available, upon request, to counsel and/or parties.

j.  JANE DOE 6 (V.M.) is a citizen and resident of the State of Missouri, with a sailing date of January 13, 2024 and cabin number 9706;

k.  JUNIOR DOE 1 (K.P.) is a citizen and resident of the State of Georgia and is a minor who is represented by and through the minor's parent and natural guardian JANE DOE 7 (S.P.), with a sailing date of January 21, 2024 and cabin number #178 (on deck 3);

l.  JANE DOE 7 (S.P.) is a citizen and resident of the State of Georgia, with a sailing date of January 21, 2024 and cabin number #178 (on deck 3).

2.  Defendant, ROYAL CARIBBEAN CRUISES LTD. ("RCCL"), is a foreign entity incorporated in Liberia with its principal place of business in Florida.

3.  Defendant, ARVIN JOSEPH MIRASOL ("MIRASOL"), is a citizen of the Republic of the Philippines.  MIRASOL was recently convicted by the United States for acts related to this matter and was sentenced to 30 years in prison.[3]

4.  The matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332.  In the alternative, if diversity jurisdiction does not apply, then this matter falls under the admiralty and maritime jurisdiction of this Court.

5.  At all times material hereto, RCCL personally or through an agent:

a.  Operated, conducted, engaged in or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

b.  Was engaged in substantial activity within this state;

c.  Operated vessels in the waters of this state;

---

[3] *See United States v. Mirasol*, Case No. 24-cr-60046-MD (S.D. Fla. August 28, 2024) [ECF No. 35]; *see also*, https://www.justice.gov/usao-sdfl/pr/cruise-ship-employee-sentenced-30-years-prison-placing-hidden-cameras-inside-passenger.

    d.  Committed one or more of the acts stated in Florida Statute §§ 48.081, 48.181 and/or 48.193;

    e.  The acts of RCCL set out in this Complaint occurred in whole or in part in this county and/or state.

    f.  RCCL was engaged in the business of providing to the public and to the Plaintiffs in particular, for compensation, vacation cruises aboard their vessels.

6.  At all times material hereto:

    a.  MIRASOL was a crewmember aboard the cruise ship *Symphony of the Seas*;

    b.  The *Symphony of the Seas* embarked and disembarked cruise passengers in Florida for cruise vacations which began and ended in Florida;

    c.  On the subject voyages, over half of the revenue passengers originally embarked and planned to finally disembark in the State of Florida, without regard to intermediate stopovers, as contemplated by Florida Statute § 910.006;

    d.  MIRASOL committed crimes during the subject cruise aboard the *Symphony of the Seas*, which are prohibited by the criminal laws of the United States and the laws of Florida.  Specifically, MIRASOL violated 18 U.S.C. §1801 and Florida Statute §810.145, against the Plaintiffs who are nationals of the United States, and other passengers who are nationals of the United States.

7.  Defendants are subject to the jurisdiction of the Courts of this state.

8.  The causes of action asserted in this Complaint arise under the General Maritime Law of the United States.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

9.  At all times material hereto, RCCL owned, operated, managed, maintained and/or controlled the vessel, the *Symphony of the Seas* (the "vessel").

10. At all times material hereto, RCCL employed and controlled MIRASOL as a crewmember assigned as a stateroom attendant aboard the vessel.

11. At all times material hereto, MIRASOL was a member of the crew working as a stateroom attendant aboard the vessel and was acting in the course and scope of his employment.

12. On or about the dates of the voyages alleged specifically in Paragraph 1, each of the Plaintiffs were paying passengers aboard the vessel, which was in navigable waters.

13. At all times material hereto, MIRASOL was assigned by RCCL to serve as stateroom attendant for the Plaintiffs' cabins.  MIRASOL had access to Plaintiffs' cabins solely by means provided to him by RCCL through providing MIRASOL a key card pass to Plaintiffs' cabins to be used in the course and scope of MIRASOL'S duties as a stateroom attendant.  As such, when MIRASOL accessed passenger cabins, including Plaintiffs' passenger cabins, it was in the course and scope of his duties as a stateroom attendant employed and subject to control by RCCL.

14. At all times material hereto, Plaintiffs had an expectation of privacy in their passenger cabins and passenger cabin bathrooms.

### Subject Incidents

15. During the subject cruises, upon information and belief, MIRASOL taped a video camera containing a memory card in the Plaintiffs' passenger cabin bathrooms and captured images of the Plaintiffs while undressed and engaging in private activities, without Plaintiffs' prior knowledge or consent. (Moreover, some of the Plaintiffs' beds were strangely propped up in their cabins and

MIRASOL behaved strangely and defensively when asked to lower the bed, and he also asked to change the stateroom in the middle of the day).

16. Upon information and belief, MIRASOL transmitted and/or uploaded images of the Plaintiffs while undressed and engaging in private activities, to third parties and/or to the world wide web, including, but not limited to, the dark web, without Plaintiffs' prior knowledge or consent.

17. As a result of MIRASOL'S actions, Plaintiffs reasonably believe that images of Plaintiffs undressed while engaging in private activities have been distributed in a manner to allow them to be able to be immediately reproduced and posted to the world wide web, including the dark web. As a result of MIRASOL'S acts and Plaintiffs' reasonable beliefs as a result of MIRASOL'S acts, Plaintiffs suffer from severe emotional distress, which manifests physically, causing the Plaintiffs physical sickness, sweating, nausea, insomnia, dizziness, crying, and physical pain, thereby causing physical impact to the Plaintiffs.  The Plaintiffs reasonably believe that these images may never be completely discovered by the Plaintiffs, not for lack of searching, but as a consequence of the vastness of the world wide web; it would be the digital equivalent of searching for specific shards of glass in the ocean. And, if Plaintiffs found the images, Plaintiffs could neither permanently extract them from the world wide web, nor could Plaintiffs be sure that Plaintiffs found all of the images. Accordingly, Plaintiffs live in constant fear, reasonably under the circumstances, that images of the Plaintiffs undressed while engaging in private activities are regularly viewed by others and used for illicit purposes.

**RCCL's Notice of Sexual Assaults and Video Voyeurism Activities on its Cruise Ships**

18. At all times material hereto, RCCL knew or should have known sexual assaults were reasonably foreseeable considering the prevalence of sexual assaults aboard RCCL's cruise ships.

Pursuant to the Secretary of Transportation's statistical compilation of shipboard incidents, there were a total of 26 sexual assaults and rapes reported during RCCL cruises in 2023; and 22 sexual assaults reported during RCCL cruises in 2022.  These shipboard incidents are (required to be) reported by RCCL directly to the Secretary of Transportation and/or the Federal Bureau of Investigation (pursuant to the Cruise Vessel Security and Safety Act of 2010).[4]

19. Additionally, the Eleventh Circuit Court of Appeal previously referenced the required reporting of RCCL's sexual assaults to the Secretary of Transportation and/or the Federal Bureau of Investigation and acknowledged "that Royal Caribbean was on notice a decade before [plaintiff's] cruise that sexual assaults on cruise ships were a serious problem." *K.T. v. Royal Caribbean Cruises, Ltd.*, 931 F.3d 1041, 1049 (11th Cir. 2019) (citing *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204 (11th Cir. 2011)).

20. The overall data concerning sexual assaults aboard cruise ships reported to the Secretary of Transportation and/or the Federal Bureau of Investigation show that sexual assault allegations on cruise ships rose in 2023, with 131 sex crimes reported to the Federal Bureau of Investigation in 2023 on ships embarking and disembarking in the United States, up from 87 in 2022 and 101 in 2019, before the COVID-19 pandemic shut the cruise industry down until mid-2021.[5]

21. Furthermore, from April 30, 2023 through May 1, 2023, a hidden Wi-Fi camera was surreptitiously installed in a public bathroom on the top deck of RCCL's cruise ship, *Harmony of the Seas*, during a cruise which left Miami on April 29, 2023.  That hidden camera recorded more than 150 people using the Royal Caribbean bathroom, including at least 40 minor children, in

---

[4] See https://www.transportation.gov/mission/safety/cruise-line-incident-reports
[5] See, Sexual assaults rose on cruise ships last year, according to federal data, USA Today, Jan. 31, 2024, Nathan Diller.

various stages of undress, until the hidden camera was discovered by a passenger on May 1, 2023 at 7:00PM and reported to the ship's security aboard the *Harmony of the Seas*.[6]

22. Accordingly, at all times material hereto, RCCL was aware of prior instances of sexual assaults, including video voyeurism occurring aboard RCCL cruise ships in the immediate year prior to the subject incident.  Yet RCCL failed to take adequate steps and/or provide adequate security and/or training and/or supervision to prevent such sexual assaults, including video voyeurism, to occur aboard its cruise ships.  Furthermore, RCCL failed to warn its passengers of sexual assaults, including video voyeurism, occurring aboard its cruise ships.  RCCL's motive for failing to warn its passengers is financial in nature; that is, RCCL willfully chooses not to warn its passengers about sexual assaults, including video voyeurism, aboard its cruise ships so as not to scare any prospective passengers away. And RCCL willfully chooses not to fortify its onboard security detail so as to thwart sexual assaults, including video voyeurism, aboard its cruise ships, because to do so would require RCCL to increase security spending and to divert berths reserved for passengers to accommodate additional security aboard its ships, thereby reducing revenue and profits.  Such willful and outrageous conduct on the part of the Defendant exposes Defendant to punitive damages. *See Lobegeiger v. Celebrity Cruises, Inc.*, 11-21620, 2011 WL 3703329, 2011 U.S. Dist. LEXIS 93933 (S.D. Fla Aug. 23, 2011).

### Admissions by MIRASOL following arrest and Miranda warnings

23. Mirasol's hidden camera was discovered in the Plaintiffs' cabin bathroom on February 26, 2024.

---

[6] See, <u>Man Arrested for Placing Hidden Camera in Royal Caribbean Cruise Ship's Public Bathroom: FBI</u>, NBC Miami, May 10, 2023, Brian Hamacher and Niko Clemmons.  See also, USA v. Froias, Case No. 23-cr-00190-FAB, U.S. District Court for Puerto Rico; Document 2-1.

24. On March 3, 2024, the vessel arrived into Port Everglades and Homeland Security Agents and Customs and Border Patrol Officers boarded the vessel and took custody of MIRASOL'S electronic devices including: an Android cellular device (IMEI 015734006047846), one Sandisk Micro SD Card, one Transcend 8 GB, one camera, one Sandisk USB Stick and one Apple watch (SN number G99T34E2KDH2).[7]

25. During examination of MIRASOL'S USB Stick device, law enforcement discovered numerous videos of naked females undressing the bathroom as well as videos of child pornography.[8]

26. During a post Miranda interview, MIRASOL admitted to taping a video camera in the guests' bathrooms that he worked as a stateroom attendant. MIRASOL explained that he would place his camera in the bathroom, and he would "pleasure himself and masturbate" after retrieving the camera and viewing the videos. MIRASOL revealed that he has been placing these cameras in the bathrooms since he started working on *Symphony of the Seas* around December 2023. MIRASOL also stated that while the guests were taking a shower, he would enter the rooms and hide under the bed while recording them naked with his cellular device.[9]

### Allegations Regarding Passengers Assigned to Mirasol's Cabins between December 1, 2023 and February 26, 2024

27. From December 1, 2023 through February 26, 2024, RCCL operated cruises embarking on the following dates aboard the *Symphony of the Seas*:

    a.   December 2, 2023;

    b.   December 10, 2023;

---

[7] *See United States v. Mirasol*, Case No. 24-cr-60046-MD (S.D. Fla. June 5, 2024) [ECF No. 23].
[8] Id.
[9] Id.

c.  December 16, 2023;

d.  December 24, 2023;

e.  December 30, 2023;

f.  January 7, 2024;

g.  January 13, 2024;

h.  January 21, 2024;

i.  January 27, 2024;

j.  February 4, 2024;

k.  February 10, 2024; and

l.  February 18, 2024.

28. Thus, for approximately 12 cruises, MIRASOL committed sexual assaults through video voyeurism on various passengers, including the Plaintiffs, who were assigned to cabins for which MIRASOL served as stateroom attendant.

29. Upon information and belief, a RCCL stateroom attendant is assigned to a section of 16 to 20 passenger cabins.

30. Upon information and belief, the passenger cabins attended to by MIRASOL aboard the *Symphony of the Seas* slept between 2 to 4 passengers.

31. Thus, MIRASOL'S victims may include up to 960 passengers (up to 12 cruises; times up to 20 passenger cabins; times up to 4 passengers per cabin; equals up to 960 passengers).

32. Upon learning of MIRASOL'S acts of sexual assaults through video voyeurism on passengers in the staterooms he attended to as a stateroom attendant since December 1, 2023, RCCL had a duty to inform all passengers who stayed in passenger cabins attended to by MIRASOL between December 1, 2023 and February 26, 2024.

33. RCCL breached its duty of reasonable care to its passengers by failing to notify all passengers in the staterooms MIRASOL attended to as a stateroom attendant from December 2023 through February 26, 2024.

34. RCCL's motive for failing to notify its passengers affected by MIRASOL'S acts was financial in nature.  RCCL was concealing the information from its passengers in order to prevent them from filing a civil suit against RCCL for damages related to MIRASOL'S acts.

   a. Notably, RCCL provides a contractually-shortened notice period of six months and statute of limitations of one year (as opposed to the Federal Statute of Limitations for Maritime Personal Injury of 3 years pursuant to 46 U.S.C. §30106).

35. MIRASOL's intentional acts described herein and admitted by MIRASOL as occurring within cabins he served as a stateroom attendant aboard the vessel between December 2023 and February 26, 2024 are sexual assaults and sexual harassment that MIRASOL committed on passengers staying in and/or using the cabin bathrooms to which MIRASOL served as a stateroom attendant aboard the vessel between December 2023 and February 26, 2024.

36. 9 U.S.C. §402(a) provides, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

## COUNT I – INVASION OF PRIVACY BY VIDEO
## VOYEURISM AND SEXUAL ASSAULTS AGAINST MIRASOL

The Plaintiffs reallege, incorporate by reference, and adopt the allegations set forth in paragraphs one (1) through thirty-six (36) as though alleged originally herein.

37. During the subject cruises, RCCL assigned Plaintiffs a passenger cabin during the subject cruises, which was a private quarter for the Plaintiffs' use.

38. During the subject cruises, MIRASOL intentionally and surreptitiously hid a camera in the cabin bathroom of the Plaintiffs assigned passenger cabin during the subject cruises, while working as a stateroom attendant, for the purpose of capturing images of the Plaintiffs undressed and engaging in private activities in the cabin bathroom, for his own use and/or to distribute and upload to the world wide web.

39. During the subject cruises, while Plaintiffs were taking a shower, MIRASOL entered the Plaintiffs' passenger cabin and hid under a bed and recorded Plaintiffs with his cellular device, for the purpose of capturing images of the Plaintiffs undressed and engaging in private activities in the cabin bathroom, for his own use and/or to distribute and upload to the world wide web.

40. At all times material hereto, MIRASOL'S intrusions into Plaintiffs' privacy were highly offensive to Plaintiffs and to reasonable persons.

41. As a direct and proximate result of the tortious actions of MIRASOL, the Plaintiffs were injured about Plaintiff's bodies, suffered physical pain, mental anguish, loss of enjoyment of life, post-traumatic stress disorder, and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiffs' injuries, suffered handicap, lost earnings and lost earning capacity, both past and future. The injuries are permanent and continuing in nature and Plaintiffs will suffer the losses and impairments in the future.  In addition, the Plaintiffs lost related costs and damages incident to their cruises.

WHEREFORE, the Plaintiffs demand judgment for all damages recoverable under the law, including punitive damages, and demand trial by jury.

**COUNT II – VICARIOUS STRICT LIABILITY FOR INVASION OF PRIVACY BY
VIDEO VOYEURISM AND SEXUAL ASSAULTS AGAINST RCCL**

The Plaintiffs reallege, incorporate by reference, and adopt the allegations set forth in paragraphs one (1) through thirty-six (36) as though alleged originally herein.

42. During the subject cruises, RCCL assigned Plaintiffs a passenger cabin during the subject cruises, which was a private quarter for the Plaintiffs' use.

43. During the subject cruises, MIRASOL intentionally and surreptitiously hid a camera in the cabin bathroom of the Plaintiffs assigned passenger cabin during the subject cruises, while working as a stateroom attendant, for the purpose of capturing images of the Plaintiffs undressed and engaging in private activities in the cabin bathroom, for his own use and/or to distribute and upload to the world wide web.

44. During the subject cruises, while Plaintiffs were taking a shower, MIRASOL entered the Plaintiffs' passenger cabin and hid under a bed and recorded Plaintiffs with his cellular device, for the purpose of capturing images of the Plaintiffs undressed and engaging in private activities in the cabin bathroom, for his own use and/or to distribute and upload to the world wide web.

45. At all times material hereto, MIRASOL'S intrusions into Plaintiffs' privacy were highly offensive to Plaintiff and to reasonable persons.

46. At all times material hereto, MIRASOL was hired, retained and/or employed by RCCL

47. At all times material hereto, MIRASOL was a member of the crew aboard the vessel owned and/or operated by RCCL.

48. At all times material hereto, RCCL was vicariously liable for the intentional tortious actions of its crewmembers/employees, including MIRASOL.

49. As a direct and proximate result of the tortious actions of MIRASOL, for which RCCL is vicariously liable, the Plaintiffs were injured about Plaintiffs' bodies, suffered physical pain,

mental anguish, loss of enjoyment of life, post-traumatic stress disorder, and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiffs injuries, suffered handicap, lost earnings and lost earning capacity, both past and future. The injuries are permanent and continuing in nature and Plaintiffs will suffer the losses and impairments in the future.  In addition, the Plaintiffs lost related costs and damages incident to their cruises.

WHEREFORE, the Plaintiffs demand judgment for all damages recoverable under the law, including punitive damages, and demand trial by jury.

### COUNT III – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS BY VIDEO VOYEURISM AND SEXUAL ASSAULTS AGAINST MIRASOL

The Plaintiffs reallege, incorporate by reference, and adopt the allegations set forth in paragraphs one (1) through thirty-six (36) as though alleged originally herein.

50. During the subject cruises, RCCL assigned Plaintiffs a passenger cabin during the subject cruises, which was a private quarter for the Plaintiffs' use.

51. During the subject cruises, MIRASOL intentionally and surreptitiously hid a camera in the cabin bathroom of the Plaintiffs assigned passenger cabin during the subject cruises, while working as a stateroom attendant, for the purpose of capturing images of the Plaintiffs undressed and engaging in private activities in the cabin bathroom, for his own use and/or to distribute and upload to the world wide web.

52. During the subject cruises, while Plaintiffs were taking a shower, MIRASOL entered the Plaintiffs' passenger cabin and hid under a bed and recorded Plaintiffs with his cellular device, for the purpose of capturing images of the Plaintiffs undressed and engaging in private activities in the cabin bathroom, for his own use and/or to distribute and upload to the world wide web.

53. At all times material hereto, MIRASOL'S intrusions into Plaintiffs' privacy were extreme and outrageous.

54. At all times material hereto, MIRASOL'S intrusions into Plaintiffs' privacy were committed intentionally and/or with a reckless disregard for the probability of causing Plaintiffs emotional distress.

55. MIRASOL'S intentional extreme and outrageous conduct toward Plaintiffs, once discovered by Plaintiffs, caused severe emotional distress to the Plaintiffs, which manifested itself physically, causing the Plaintiffs physical sickness, sweating, nausea, insomnia, dizziness, crying, and physical pain, thereby causing physical impact to the Plaintiffs.

56. As a direct and proximate result of the intentional infliction of emotional distress by MIRASOL, the Plaintiffs were injured about Plaintiffs' bodies, suffered physical pain, mental anguish, loss of enjoyment of life, post-traumatic stress disorder, and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiffs injuries, suffered handicap, lost earnings and lost earning capacity, both past and future. The injuries are permanent and continuing in nature and Plaintiffs will suffer the losses and impairments in the future.  In addition, the Plaintiffs lost related costs and damages incident to their cruises.

WHEREFORE, the Plaintiffs demand judgment for all damages recoverable under the law, including punitive damages, and demand trial by jury.

## COUNT IV – VICARIOUS STRICT LIABILITY FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS BY VIDEO VOYEURISM AND SEXUAL ASSAULTS AGAINST RCCL

The Plaintiffs reallege, incorporate by reference, and adopt the allegations set forth in paragraphs one (1) through thirty-six (36) as though alleged originally herein.

57. During the subject cruises, RCCL assigned Plaintiffs a passenger cabin during the subject cruises, which was a private quarter for the Plaintiffs use.

58. During the subject cruises, MIRASOL intentionally and surreptitiously hid a camera in the cabin bathroom of the Plaintiffs assigned passenger cabin during the subject cruises, while working as a stateroom attendant, for the purpose of capturing images of the Plaintiffs undressed and engaging in private activities in the cabin bathroom, for his own use and/or to distribute and upload to the world wide web.

59. During the subject cruises, while Plaintiffs were taking a shower, MIRASOL entered the Plaintiffs' passenger cabin and hid under a bed and recorded Plaintiffs with his cellular device, for the purpose of capturing images of the Plaintiffs undressed and engaging in private activities in the cabin bathroom, for his own use and/or to distribute and upload to the world wide web.

60. At all times material hereto, MIRASOL'S intrusions into Plaintiffs' privacy were extreme and outrageous.

61. At all times material hereto, MIRASOL'S intrusions into Plaintiffs' privacy were committed intentionally and/or with a reckless disregard for the probability of causing Plaintiffs emotional distress.

62. MIRASOL'S intentional extreme and outrageous conduct toward Plaintiffs, once discovered by Plaintiffs, caused severe emotional distress to the Plaintiffs, which manifested itself physically, causing the Plaintiffs physical sickness, sweating, nausea, insomnia, dizziness, crying, and physical pain, thereby causing physical impact to the Plaintiffs.

63. At all times material hereto, MIRASOL was hired, retained and/or employed by RCCL

64. At all times material hereto, MIRASOL was a member of the crew aboard the vessel owned and/or operated by RCCL.

65. At all times material hereto, RCCL was vicariously liable for the intentional tortious actions of its crewmembers/employees, including MIRASOL.

66. As a direct and proximate result of the intentional infliction of emotional distress by MIRASOL, for which RCCL is vicariously liable, the Plaintiffs were injured about Plaintiffs' bodies, suffered physical pain, mental anguish, loss of enjoyment of life, post-traumatic stress disorder, and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiffs' injuries, suffered handicap, lost earnings and lost earning capacity, both past and future. The injuries are permanent and continuing in nature and Plaintiffs will suffer the losses and impairments in the future. In addition, the Plaintiffs lost related costs and damages incident to their cruises.

WHEREFORE, the Plaintiffs demand judgment for all damages recoverable under the law, including punitive damages, and demand trial by jury.

## COUNT V – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS BY VIDEO VOYEURISM AND SEXUAL ASSAULTS AGAINST MIRASOL

The Plaintiffs reallege, incorporate by reference, and adopt the allegations set forth in paragraphs one (1) through thirty-six (36) as though alleged originally herein.

67. During the subject cruises, RCCL assigned Plaintiffs a passenger cabin during the subject cruises, which was a private quarter for the Plaintiffs use.

68. During the subject cruises, MIRASOL intentionally and surreptitiously hid a camera in the cabin bathroom of the Plaintiffs' assigned passenger cabin during the subject cruises, while working as a stateroom attendant, for the purpose of capturing images of the Plaintiffs undressed and engaging in private activities in the cabin bathroom, for his own use and/or to distribute and upload to the world wide web.

69. During the subject cruises, while Plaintiffs were taking a shower, MIRASOL entered the Plaintiffs' passenger cabin and hid under a bed and recorded Plaintiffs with his cellular device, for the purpose of capturing images of the Plaintiffs undressed and engaging in private activities in the cabin bathroom, for his own use and/or to distribute and upload to the world wide web.

70. At all times material hereto, MIRASOL'S intrusions into Plaintiffs privacy were committed negligently and/or with a failure to exercise reasonable care for the Plaintiffs.

71. MIRASOL'S aforementioned acts, once discovered by Plaintiffs, caused severe emotional distress to the Plaintiffs, which manifested itself physically, causing the Plaintiffs physical sickness, sweating, nausea, insomnia, dizziness, crying, and physical pain, thereby causing physical impact to the Plaintiffs.

72. As a direct and proximate result of the negligent infliction of emotional distress by MIRASOL, the Plaintiffs was injured about Plaintiffs' bodies, suffered physical pain, mental anguish, loss of enjoyment of life, post-traumatic stress disorder, and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiffs injuries, suffered handicap, lost earnings and lost earning capacity, both past and future. The injuries are permanent and continuing in nature and Plaintiffs will suffer the losses and impairments in the future.  In addition, the Plaintiffs lost related costs and damages incident to their cruises.

WHEREFORE, the Plaintiffs demand judgment for all damages recoverable under the law, including punitive damages, and demand trial by jury.

## COUNT VI – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS BY VIDEO VOYEURISM AND SEXUAL ASSAULTS AGAINST RCCL

The Plaintiffs reallege, incorporate by reference, and adopt the allegations set forth in paragraphs one (1) through thirty-six (36) as though alleged originally herein.

73. During the subject cruises, RCCL assigned Plaintiffs a passenger cabin during the subject cruises, which was a private quarter for the Plaintiffs use.

74. During the subject cruises, MIRASOL negligently intentionally and surreptitiously hid a camera in the cabin bathroom of the Plaintiffs' assigned passenger cabin during the subject cruises, while working as a stateroom attendant, for the purpose of capturing images of the Plaintiffs undressed and engaging in private activities in the cabin bathroom, for his own use and/or to distribute and upload to the world wide web.

75. During the subject cruises, while Plaintiffs were taking a shower, MIRASOL entered the Plaintiffs' passenger cabin and hid under a bed and recorded Plaintiffs with his cellular device, for the purpose of capturing images of the Plaintiffs undressed and engaging in private activities in the cabin bathroom, for his own use and/or to distribute and upload to the world wide web.

76. At all times material hereto, MIRASOL'S intrusions into Plaintiffs' privacy were committed negligently and/or with a failure to exercise reasonable care for the Plaintiffs.

77. MIRASOL'S aforementioned acts, once discovered by Plaintiffs, caused severe emotional distress to the Plaintiffs, which manifested itself physically, causing the Plaintiffs physical sickness, sweating, nausea, insomnia, dizziness, crying, and physical pain, thereby causing physical impact to the Plaintiffs.

78. At all times material hereto, MIRASOL was hired, retained and/or employed by RCCL

79. At all times material hereto, MIRASOL was a member of the crew aboard the vessel owned and/or operated by RCCL.

80. At all times material hereto, RCCL acted negligently and its negligence permitted MIRASOL to perform the aforementioned acts, through RCCL's failure to:

    a.   Adequately vet and investigate MIRASOL before hiring MIRASOL;

b.  Adequately train MIRASOL;

c.  Adequately supervise MIRASOL;

d.  Adequately inspect Plaintiffs' cabins;

e.  Adequately inspect and screen for cameras and other electronic devices which may be mounted to walls and/or fixtures and used to surreptitiously capture images of passengers without their prior knowledge and consent;

f.  Utilize a hidden camera detector[10] to search passenger cabins;

g.  Make hidden camera detectors available to passengers to search passenger cabins after warning passengers of RCCL's prior incident(s) involving sexual assaults, including hidden cameras;

h.  Provide adequate security aboard the vessel;

i.  Adequately train security aboard the vessel;

j.  Promulgate and enforce adequate policies and procedures to prevent video voyeurism aboard the vessel;

k.  Promulgate and enforce adequate policies and procedures to inspect passenger cabins for hidden cameras, as both a preventative measure to deter the placement of hidden cameras in passenger cabins; as well as a protective measure to discover hidden cameras placed in passenger cabins;

l.  Promulgate and enforce adequate policies and procedures to inspect crew cabins for contraband, including cameras which can be hidden in passenger cabins and illicit digital images on digital media and memory physically located in crew cabins;

---

[10] Hidden camera detectors are readily available commercially and can cost less than Fifty Dollars. See, e.g. https://www.amazon.com/RAVIAD-Detectors-Listening-Electronic-Sensitivity/dp/B0DHTRJFZ1?th=1

m. Promulgate and enforce adequate policies and procedures with regard to conducting adequate interviews, assessments, background checks, peer reviews, investigations, confirmation of recommendations, and other enhanced vetting of employee crewmembers with direct access to passenger cabins.

81. As a direct and proximate result of the negligent infliction of emotional distress by RCCL, the Plaintiffs was injured about Plaintiffs' bodies, suffered physical pain, mental anguish, loss of enjoyment of life, post-traumatic stress disorder, and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered handicap, lost earnings and lost earning capacity, both past and future. The injuries are permanent and continuing in nature and Plaintiff will suffer the losses and impairments in the future.  In addition, the Plaintiffs lost related costs and damages incident to their cruises.

WHEREFORE, the Plaintiffs demand judgment for all damages recoverable under the law, including punitive damages, and demand trial by jury.

### COUNT VII – NEGLIGENT SECURITY AGAINST RCCL

The Plaintiffs reallege, incorporate by reference, and adopt the allegations set forth in paragraphs one (1) through thirty-six (36) as though alleged originally herein.

82. At all times material hereto, it was the duty of RCCL to provide the Plaintiffs with reasonable care under the circumstances while Plaintiffs were passengers aboard the vessel.

83. At all times material hereto, it was the duty of RCCL to provide reasonable security and/or implement reasonable security measures aboard the vessel.

84. At all times material hereto, RCCL voluntarily undertook and/or assumed the duty of security by retaining crewmembers to serve as security officers about the vessel and/or advertising

its onboard security.  For instance, as the Eleventh Circuit recognized in the case of *K.T.*, Defendant "assures all who are thinking of sailing with it that 'the safety and security of our guests and crew is our highest priority and fundamental to our operations.'[11] It boasts that it 'is committed to preventing illegal activity,' and '[d]uring each voyage, we remain dedicated to safeguarding our guests and crew.'[12] And it promises that the ship's Captain 'will take appropriate action to ensure the safety, security and wellbeing of our guests.'"[13] *K.T.*, 931 F.3d at 1047.

85. During the subject cruises, RCCL and/or its agents, servants and/or employees breached its duty to the Plaintiffs through its failure to:

    a.  Provide adequate supervision and/or security aboard the vessel, including, but not limited to, supervising stateroom attendants and/or inspecting passenger cabins for hidden cameras;

    b.  Provide adequate supervision and/or security to protect passengers aboard the vessel;

    c.  Provide adequate supervision and/or security presence aboard the vessel and/or perform random surprise inspections of passenger cabins following stateroom attendants' work in passenger cabins, so as to deter video voyeurism aboard the vessel;

    d.  Adequately supervise individuals working aboard the vessel to ensure they do not engage in video voyeurism aboard the vessel;

---

[11] *Safety & Security*, Royal Caribbean Cruises, https://www.royalcaribbean.com/resources/safety-and-security (last visited July 27, 2020).
[12] Id.
[13] *Royal Caribbean Guest Conduct Policy*, Royal Caribbean Cruises, https://www.royalcaribbean.com/content/dam/royal/resources/pdf/guest-conduct-policy.pdf (last updated Nov. 12, 2018).

e.  Adequately inspect crew cabins aboard the vessel for contraband, including cameras, which can be hidden in passenger cabins and illicit digital images on digital media and memory physically located in crew cabins;

f.  Utilize a hidden camera detector to search passenger cabins;

g.  Make hidden camera detectors available to passengers to search passenger cabins after warning passengers of RCCL's prior incident(s) involving sexual assaults, including hidden cameras;

h.  Maintain and/or monitor security cameras on the vessel in order to identify potentially dangerous situations, incidents, and/or contraband being brought into passenger cabins, such as a camera which can be mounted to a wall or fixture;

i.  Promulgate and enforce adequate policies and procedures to prevent video voyeurism aboard the vessel;

j.  Promulgate and enforce adequate policies and procedures to inspect passenger cabins for hidden cameras, as both a preventative measure to deter the placement of hidden cameras in passenger cabins; as well as a protective measure to discover hidden cameras placed in passenger cabins;

k.  Promulgate and enforce adequate policies and procedures to inspect crew cabins for contraband, including cameras which can be hidden in passenger cabins and illicit digital images on digital media and memory physically located in crew cabins;

l.  Promulgate and enforce adequate policies and procedures with regard to conducting adequate interviews, assessments, background checks, peer reviews, investigations, confirmation of recommendations, and other enhanced vetting of employee crewmembers with direct access to passenger cabins;

m.  Failure to have adequate security aboard the vessel in terms of numbers and/or training and/or experience;

n.  Failure to adequately train security;

o.  Failure to adequately supervise security.

86. The above acts and/or omissions caused and/or contributed to the subject incident because, had RCCL provided reasonable security and/or implemented reasonable security measures consistent with the foregoing, MIRASOL would not have been able to engage in an ongoing scheme to hide cameras in the cabin bathrooms of the passenger cabins for which he served as a stateroom attendant for months, including the Plaintiffs cabins on the subject cruises.

87. At all times material hereto, RCCL knew or should have known of the foregoing conditions and conduct resulting in the subject video voyeurism of the Plaintiffs and did not correct them, or the conditions and conduct existed for a sufficient length of time so that RCCL, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them.  This knowledge was or should have been acquired through prior incidents of sexual assaults and video voyeurism aboard RCCL's cruise ships, which did or should have revealed that further instances of sexual assaults, including video voyeurism, was reasonably foreseeable, including, but not limited to, the allegations contained in paragraphs 18-22.  In addition, RCCL was on notice and/or created the dangerous conditions by the lack of warnings and/or supervision and/or security and/or training.

88. As a direct and proximate result of RCCL's negligence, the Plaintiffs were injured about Plaintiffs' bodies, suffered physical pain, mental anguish, loss of enjoyment of life, post-traumatic stress disorder, and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiffs' injuries,

suffered handicap, lost earnings and lost earning capacity, both past and future. The injuries are permanent and continuing in nature and Plaintiffs will suffer the losses and impairments in the future.  In addition, the Plaintiffs lost related costs and damages incident to their cruises.

WHEREFORE, the Plaintiffs demand judgment for all damages recoverable under the law, including punitive damages, and demand trial by jury.

## COUNT VIII – GENERAL NEGLIGENCE AGAINST RCCL

The Plaintiffs reallege, incorporate by reference, and adopt the allegations set forth in paragraphs one (1) through thirty-six (36) as though alleged originally herein.

89. At all times material hereto, it was the duty of RCCL to provide the Plaintiffs with reasonable care under the circumstances while Plaintiffs were passengers aboard the vessel.

90. During the subject cruises, Defendant, its agents and/or employees, breached its duty to exercise reasonable care, through its failure to:

 a. Provide reasonably safe conditions for the Plaintiffs during the voyage aboard the vessel (reasonably safe conditions include, but are not limited to, preventing an atmosphere wherein persons could target and/or sexually assault passengers, including but not limited to, hiding cameras in passenger staterooms);

 b. Promulgate and/or enforce adequate policies and/or procedures designed to prevent individuals working aboard the vessel from being able to bring cameras into passenger staterooms so that they can be hidden;

 c. Adequately train individuals working aboard the vessel;

 d. Adequately supervise individuals working aboard the vessel;

 e. Implement and/or enforce an adequate safety management system (SMS);

   f.   Advise and warn passengers of the need to inspect their passenger cabins for hidden cameras;

   g.   Utilize a hidden camera detector to search passenger cabins;

   h.   Make hidden camera detectors available to passengers to search passenger cabins after warning passengers of RCCL prior incident(s) involving sexual assault, including hidden camera;

   i.   Adequately interview, assess, conduct background checks, obtain peer reviews, investigate, confirm recommendations, and conduct other enhanced vetting of employee crewmembers with direct access to passenger cabins;

   j.   Promulgate and enforce adequate policies and procedures to interview, assess, conduct background checks, obtain peer reviews, investigate, confirm recommendations, and conduct other enhanced vetting of employee crewmembers with direct access to passenger cabins.

91. The above acts and/or omissions caused and/or contributed to the subject incident because, had RCCL not failed to provide the foregoing, MIRASOL would not have been able to engage in an ongoing scheme to hide cameras in the cabin bathrooms of the passenger cabins for which he served as a stateroom attendant for months, including the Plaintiffs' cabins on the subject cruises.

92. At all times material hereto, RCCL knew or should have known of the foregoing conditions and conduct resulting in the subject video voyeurism of the Plaintiffs and did not correct them, or the conditions and conduct existed for a sufficient length of time so that RCCL, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them. This knowledge was or should have been acquired through prior incidents of sexual assaults and video voyeurism aboard RCCL's cruise ships, which did or should have revealed that further instances

of sexual assaults, including video voyeurism, was reasonably foreseeable, including, but not limited to, the allegations contained in paragraphs 18-22.  In addition, RCCL was on notice and/or created the dangerous conditions by the lack of warnings and/or supervision and/or security and/or training.

93. As a direct and proximate result of RCCL's negligence, the Plaintiffs were injured about Plaintiffs' bodies, suffered physical pain, mental anguish, loss of enjoyment of life, post-traumatic stress disorder, and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiffs' injuries, suffered handicap, lost earnings and lost earning capacity, both past and future. The injuries are permanent and continuing in nature and Plaintiffs will suffer the losses and impairments in the future.  In addition, the Plaintiffs lost related costs and damages incident to their cruises.

WHEREFORE, the Plaintiffs demand judgment for all damages recoverable under the law, including punitive damages, and demand trial by jury.

<b>COUNT IX – BREACH OF IMPLIED COVENANT OF<br>GOOD FAITH AND FAIR DEALING AGAINST RCCL</b>

The Plaintiffs reallege, incorporate by reference, and adopt the allegations set forth in paragraphs one (1) through thirty-six (36) as though alleged originally herein.

94. At all times material hereto, RCCL and the Plaintiffs were parties to a passenger ticket contract, written by RCCL.

95. The passenger ticket contract between RCCL and the Plaintiffs, contains an implied covenant of good faith and fair dealing.

96. The passenger ticket contract between RCCL and the Plaintiffs refers to and incorporates RCCL's Guest Health, Safety, and Conduct Policy, and Carrier's "policies against fraternization with crew."

<b>ARONFELD TRIAL LAWYERS</b><br>Aronfeld.com<br><b>Page 27 of 30</b>

97. RCCL's Guest Health, Safety, and Conduct Policy provides "Our crew members are friendly, outgoing and helpful, and they will do their very best to make a guest's vacation as enjoyable as possible.  Please do not misinterpret their friendliness.  Crew members are prohibited from engaging in physical relationships with guests.  Crew members are not permitted to socialize with guests beyond their professional duties, and are not permitted to be in guest staterooms, except for the performance of their shipboard duties." (emphasis added).

98. At all times material hereto, Plaintiffs had performed all necessary prerequisites under the passenger ticket contract between RCCL and the Plaintiffs.

99. On or about February 26, 2024, RCCL learned that MIRASOL had been hiding cameras in the passenger cabin bathrooms of the passenger cabins he was assigned to serve as Stateroom Attendant and committed acts of sexual assaults through video voyeurism and hiding under beds in the passenger cabins he was assigned to serve as Stateroom Attendant to capture video and images of passengers showering.

100. Shortly after February 26, 2024, RCCL knew or should have known that MIRASOL had been hiding cameras in the passenger cabin bathrooms of the passenger cabins he was assigned to serve as Stateroom Attendant and was committing acts of sexual assaults through video voyeurism and hiding under beds in the passenger cabins he was assigned to serve as Stateroom Attendant to capture video and images of passengers showering, since he started working on the Vessel in December 2023.

101. Upon learning of MIRASOL'S acts of sexual assaults through video voyeurism on passengers in the staterooms he attended to as a stateroom attendant since December 1, 2023, RCCL had a duty, pursuant to the implied covenant of good faith and fair dealing within the passenger ticket contract between RCCL and Plaintiffs, to inform all passengers who stayed in

passenger cabins attended to by MIRASOL between December 1, 2023 and February 26, 2024 that they were potential victims of MIRASOL's sexual assaults through video voyeurism and MIRASOL hiding under beds in passenger cabins to capture video and images of passengers showering.

102.    RCCL breached the implied covenant of good faith and fair dealing in its passenger ticket contract between RCCL and Plaintiffs, by failing to notify all passengers in the staterooms MIRASOL attended to as a stateroom attendant from December 2023 through February 26, 2024.

103.    RCCL's motive for failing to notify its passengers affected by MIRASOL'S acts was financial in nature. RCCL was concealing the information from its passengers in order to prevent them from filing a civil suit against RCCL for damages related to MIRASOL'S acts.

a.   Notably, RCCL provides a contractually-shortened notice period of six months and statute of limitations of one year (as opposed to the Federal Statute of Limitations for Maritime Personal Injury of 3 years pursuant to 46 U.S.C. §30106).

104.    RCCL's conduct in failing to notify its passengers affected by MIRASOL's acts was not consistent with the Plaintiffs' reasonable expectations under the passenger ticket contract and RCCL's Guest Health, Safety, and Conduct Policy, and Carrier's "policies against fraternization with crew."

105.    As a direct and proximate result of RCCL's breach of the implied covenant of good faith and fair dealing in the passenger ticket contract between RCCL and the Plaintiffs, the Plaintiffs did not discover their injuries in time to provide notice to RCCL and file suit against RCCL and MIRASOL within the contractually-shortened time limits provided by RCCL; and they were injured about Plaintiffs' bodies, suffered physical pain, mental anguish, loss of enjoyment of life, post-traumatic stress disorder, and other mental and/or nervous disorders, aggravation of any

previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiffs' injuries, suffered handicap, lost earnings and lost earning capacity, both past and future. The injuries are permanent and continuing in nature and Plaintiffs will suffer the losses and impairments in the future.  In addition, the Plaintiffs lost related costs and damages incident to their cruises.

WHEREFORE, the Plaintiffs demand judgment for all damages recoverable under the law, including punitive damages, and demand trial by jury.

<u>**DEMAND FOR JURY TRIAL**</u>

The Plaintiffs demand trial by jury on all issues so triable.

**Dated:** December 26, 2024.

Respectfully submitted,

*/s/ Spencer M. Aronfeld, Esq.*
**Spencer M. Aronfeld, Esq.**
Florida Bar No.: 905161
aronfeld@Aronfeld.com
**Matthias M. Hayashi**
Florida Bar No.: 115973
mhayashi@aronfeld.com
**Abby H. Ivey, Esq.**
Florida Bar No.: 1002774
aivey@aronfeld.com
**ARONFELD TRIAL LAWYERS**
One Alhambra Plaza, Penthouse
Coral Gables, Florida 33134
P:      (305) 441.0440
F:      (305) 441.0198
***Attorneys for Plaintiffs***